**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ROGER M. KENT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 07-1105-JTM |
| ) | |
| **SOUTHERN STAR CENTRAL** ) | |
| **GAS PIPELINE, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on (1) plaintiff's motion to compel (Doc. 52) and (2) defendant's motion for a supplemental protective order (Doc. 61). Both motions are opposed. For the reasons set forth below, both motions shall be GRANTED IN PART and DENIED IN PART.

**Background**

Plaintiff owns and operates oil and gas leases located in Anderson County, Kansas. Southern also owns and operates natural gas "storage fields" in Anderson County, Kansas. The storage fields are the result of Southern's injection of natural gas into certain depleted gas fields. Southern's right to utilize subsurface storage is based on: (1) agreements and assignments which gave Southern's predecessors the rights to the gas and gas storage at

certain subsurface depths and (2) regulatory certificates and permits issued by the Federal Energy Regulatory Commission ("FERC") and the Kansas Corporation Commission ("KCC").[1] Plaintiff produces oil from production zones located above Southern's subsurface storage fields.

Highly summarized, plaintiff alleges that natural gas has migrated from Southern's authorized storage area and wrongfully interfered with his oil production operations. He seeks damages based on claims of (1) intentional nuisance, (2) breach of contract and implied covenants, and (3) strict liability.[2] Southern denies plaintiff's claims and asserts counterclaims, arguing that the migration of its natural gas was caused by plaintiff's use of "enhanced recovery methods" to increase oil production from plaintiff's leases. "Enhanced recovery methods" include (1) drilling wells, (2) fracture treatments, (3) water flooding and (4) other techniques.

### Plaintiff's Motion to Compel

Plaintiff initially moved to compel documents responsive to three production

---

[1] For example, Southern has regulatory permits to conduct storage operations at the North Welda field "in the Colony zone at a depth of 893-938 feet with a maximum wellhead shut-in pressure of 430 psig and with maximum storage volume at defined conditions not to exceed 15,500 MMCFG (million cubic feet of gas)." Plaintiff's Amended Complaint, Doc. 60, p. 5.

[2] Plaintiff also seeks attorney fees and expenses under K.S.A. § 55-1210(c).

requests.[3]   Southern counters (and plaintiff does not dispute) that Production Request Nos. 2 and 3 have now been satisfied and that the only remaining discovery dispute concerns Production Request No. 1 which requests:

> [t]he applications and supporting documents, including any amendments thereto, submitted by Southern to the Kansas Corporation Commission (KCC) pursuant to K.A.R. § 82-3-1000 et seq. with respect to any applications for Provisional Operating Permits or Fully Authorized Operating Permits for Southern's Storage Fields.

With respect to Production Request No. 1, Southern produced the narrative portions of the requested applications and supporting documents and also produced a redacted version of the figures and maps attached to the KCC applications.  The redacted version contains information concerning plaintiff's leased acreage (approximately 900 acres) but excludes maps and figures for the remaining gas storage field (an additional 19,000 acres).  Plaintiff seeks production of the redacted information.  Southern opposes production and also moves for a supplemental protective order.  The parties' arguments are discussed in greater detail below.

---

[3] See, Defendant's Response to Plaintiff's Second Request for Production of Documents, Requests 1, 2, and 3.  (Doc. 53-2).

**Motion to Compel**

**Relevance**

Southern argues that the maps and figures covering areas beyond the boundaries of plaintiff's leases are not relevant. However, the court is persuaded that the requested information is "relevant" for purposes of discovery. As noted above, Southern has asserted a counterclaim which alleges that plaintiff's oil operations caused the gas migration and resulting loss to defendant. Evidence that gas migration has also occurred under "other" leased acreage above the storage field is reasonably calculated to lead to admissible evidence that plaintiff's oil operations did not cause the gas migration.[4] Equally important, defendant's expert witness opined that the migration pathway "is mainly ... improperly plugged wells on lands controlled by the plaintiff." The expert's opinion was based, in part, on a study of "all of the wells within the North and South Welda fields." Because defendant's expert relied on information beyond the boundaries of plaintiff's leased acreage in reaching his conclusions, the court is satisfied that the information requested by plaintiff

---

[4] For example, if gas migration were found under other oil leases and the operator of those leases has not engaged in "enhanced recovery methods," an inference could be raised that plaintiff's "methods" did not cause the gas migration.

Southern counters that the storage field is a "heterogeneous" reservoir; therefore, the circumstances found in one part of the field do not prove what might be occurring in another section of the field. This argument goes to the weight to be given to any evidence which plaintiff might discover from reviewing the documents rather than the question of relevance.

-4-

is relevant.

**Work Product**

Southern argues that the information plaintiff requests is protected by the work product doctrine. However, this argument fails for two reasons. First, Southern failed to assert the work product doctrine in its response to plaintiff's production request. Fed. R. Civ. P. 26(b)(5) requires that a party withholding materials based on a claim of privilege or work product *must* (1) expressly make the claim and (2) describe the information in sufficient detail to allow other parties to assess the claim. Because Southern failed to comply with Rule 26(b)(5), its claim of work product is waived.[5]

Additionally, Southern provided the information which it now claims is work product to the KCC and to FERC. Notwithstanding this production, Southern contends that the information is still protected by the work product doctrine. However, the Tenth Circuit has rejected the "selective waiver" theory currently suggested by Southern. See In re Quest Communications Interns, Inc., 450 F.3d 1179 (10th Cir. 2006)(work product waived where material was provided to SEC as part of agency's administrative investigation). Accordingly, Southern has waived its claim of work product by providing the materials to FERC and the

---

[5] Southern's response to the production request indicates that the documents contain "confidential and proprietary information which Southern Star is not willing to produce, unless subject to an acceptable supplemental protective order." The assertion that documents are "confidential" and/or "proprietary" is not sufficient to invoke the work product doctrine.

KCC.

**Confidential and Proprietary Commercial Information**

Southern argues that the documents requested contain "valuable and confidential proprietary commercial information concerning recoverable oil reserves" and that plaintiff's expert, Mr. McCune, has been identified "in at least three other pending matters in which Southern Star is seeking to acquire gas storage rights." Southern's argument implies that Mr. McCune is using this case to gain an advantage in the "other matters."

Aside from Southern's conclusory accusations, the record contains no evidence of any improper motive or actions by Mr. McCune. Accordingly, the court rejects any suggestion of impropriety by plaintiff or Mr. McCune. However, the court agrees that Southern's estimate of oil reserves in the storage field is valuable information. Moreover, the court is not persuaded that plaintiff has shown the relevance of the estimated oil reserves for leases not owned by plaintiff. Therefore, Southern may redact the information concerning estimated oil reserves for the "other" leases (approximately 19,000 acres) from its production.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel **(Doc. 52)** is **GRANTED IN PART.** Southern shall produce the requested information, consistent with the rulings herein, on or before **January 6, 2009.**

## Defendant's Motion for a Supplemental Protective Order

Southern moves for a supplemental protective order "limiting the scope of confidential maps and related information that must be produced to the area encompassing plaintiff's leases plus [one-quarter] outside but immediately adjacent to the boundaries of plaintiff's leases." Southern's arguments for this restriction mirror those raised in opposition to plaintiff's motion to compel (relevance, work product, and proprietary information). For the reasons set forth above, Southern's arguments are rejected and its request for a "one-quarter mile" limitation is DENIED.

Southern also moves for a supplemental protective order providing "that any notes, summaries or other documentation derived from the confidential documents be subject to the terms of the current protective order." Plaintiff has no objection to extending the existing protective order to notes or summaries; therefore, the second portion of Southern's motion shall be GRANTED.

**IT IS THEREFORE ORDERED** that Southern's motion to supplement the protective order **(Doc. 61)** is **GRANTED IN PART** and **DENIED IN PART**, consistent with the rulings expressed herein. **IT IS FURTHER ORDERED** that Southern shall submit a revised protective order consistent with the rulings expressed herein on or before **January 6th, 2009.**

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 18th day of December 2008.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge